UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ASHLEY R CLARK, | Case No. 3:25-cv-05133-TMC |
| Plaintiff, | ORDER ON DEFENDANTS' MOTIONS TO DISMISS, PLAINTIFF'S CROSS-MOTIONS, AND PLAINTIFF'S MOTION TO STRIKE, MOTION FOR LEAVE TO FILE, AND MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| EVERGREEN MONEY MORTGAGE | |
| COMPANY; THURSTON COUNTY TITLE | |
| COMPANY; FEDERAL HOME LOAN | |
| MORTGAGE CORPORATION; | |
| MORTGAGE ELECTRONIC | |
| REGISTRATION SYSTEMS, INC.; | |
| SELECT PORTFOLIO SERVICING, INC.; | |
| WELLS FARGO SECURITIES, LLC, | |
| Defendant. | |

## I.    INTRODUCTION

This case arises out of the securitization of pro se Plaintiff Ashley Clark's mortgage loan in 2016, and the later assignment of the Deed of Trust to U.S. Bank National Association and then to Select Portfolio Servicing, Inc. ("SPS") in 2024. In August 2016, Ms. Clark executed a

promissory note and Deed of Trust securing a loan in the principal amount of $252,000 from Evergreen Money Mortgage ("Evergreen"). The loan was then securitized into Freddie Mac Multiclass Certificates, Series 461 and issued on September 30, 2016.

On February 18, 2025, Ms. Clark sued in this Court. Dkt. 1. Defendants are Evergreen, Thurston County Title Company, Federal Home Loan Mortgage Company ("Freddie Mac"), Mortgage Electronic Registrations Systems, Inc. ("MERS"), SPS, and Wells Fargo Securities, LLC. Ms. Clark alleges that all Defendants violated the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(a)–(d), the False Claims Act ("FCA"), 31 U.S.C. § 3729, the Real Estate Settlement Act ("REPSA"), 12 U.S.C. § 2601 *et seq*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. Ms. Clark also asserts that all Defendants were unjustly enriched and violated Washington state trust law. Finally, Ms. Clark alleges that Evergreen and Thurston County Title Company breached their fiduciary duty by failing to act in her best interest and omitting material facts during the loan transaction.

Defendants Evergreen and Thurston County Title Company[1] and Defendants Freddie Mac, Wells Fargo Securities, LLC, MERS, and SPS each moved to dismiss. Dkt. 22, 26. Ms. Clark, in response, filed two cross-motions seeking to strike all recorded assignments of the Deed of Trust dated after 2016 and Evergreen's characterization of the complaint as a "shotgun pleading." Dkt. 30, 31. Ms. Clark further requests declaratory relief that no Defendant qualifies as a lawful holder of the promissory note and asks that the Court issue an order directing Defendants to preserve all relevant documents and communications. *Id.* Ms. Clark also filed a motion to strike Thurston County Title Company's affirmative defenses, Dkt. 32, and a motion for leave to file, Dkt. 34.

---

[1]Defendant Thurston County Title Company notified the Court it was joining Evergreen's motion to dismiss. Dkt. 28.

ORDER ON DEFENDANTS' MOTIONS TO DISMISS, PLAINTIFF'S CROSS-MOTIONS, AND PLAINTIFF'S MOTION TO STRIKE, MOTION FOR LEAVE TO FILE, AND MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

1    Shortly before this order was issued, Ms. Clark filed a motion for temporary restraining

2  order and a motion for disbursement of funds on June 6, 2025. Dkt. 61, 62. In the motion for

3  temporary restraining order, Ms. Clark sought to "enjoin all Defendants, . . . but not limited to

4  Quality Loan Servicing Corporation from proceeding with any non-judicial foreclosure, trustee

5  sale, issuance or recording of any Notice of Default or Notice of Trustee's Sale, or otherwise

6  interfering with [her] possession, title, or beneficial interest in the subject property, pending final

7  determination of this case." Dkt. 61 at 2. Ms. Clark further requested in her motion for

8  disbursement of funds that the Court impose a constructive trust over "all funds and financial

9  instruments derived from Plaintiff's mortgage note and property . . . for the benefit of Plaintiff or

10 her designated living trust, the Clark Family Irrevocable Trust." Dkt. 62 at 4.

11   For the reasons explained below, the Court GRANTS the motions to dismiss (Dkt. 22,

12 26). Ms. Clark's RICO claim is DISMISSED without prejudice and all other claims are

13 DISMISSED with prejudice. Ms. Clark's cross-motions are DENIED (Dkt. 30, 31) and her

14 motion to strike, motion for leave to file, motion for partial summary judgment, motion for

15 temporary restraining order, and motion for disbursement of funds are also DENIED as moot

16 (Dkt. 32, 34, 47, 61, 62).

## II.    BACKGROUND

18    On August 4, 2016, Ms. Clark and Kenneth J. Clark (the "Clarks") executed a promissory

19 note in the principal amount of $252,000 with a maturity date of September 1, 2046 and

20 payments due to Evergreen. Dkt 1 at 18; Dkt. 27 at 6. The note was secured by a Deed of Trust

21 attached to real property located in Olympia, Washington. *Id.*; *see* Dkt. 27 at 5–8.[2] The deed was

---

[2] Along with the motion to dismiss, Defendants filed a request for judicial notice of three documents: (1) the Deed of Trust recorded on September 17, 2016 in Thurston County under Instrument No. 4517600; (2) the Assignment of Deed of trust recorded on July 23, 2024 in Thurston County under Instrument No. 5022703; and (3) the Assignment of Deed of Trust

ORDER ON DEFENDANTS' MOTIONS TO DISMISS, PLAINTIFF'S CROSS-MOTIONS, AND PLAINTIFF'S MOTION TO STRIKE, MOTION FOR LEAVE TO FILE, AND MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

recorded with Thurston County, Washington on August 17, 2016. *See* Dkt. 27 at 5–20. The terms

of the deed provided that both the deed itself and the note it secured—including a partial

interest—could "be sold one or more times without prior notice" to the Clarks. *Id.* at 14. The

deed also incorporated a "MERS Rider" that stated:

> MERS is appointed as the Nominee for Lender to exercise the rights, duties and
> obligations of Lender as Lender may from time to time direct, including but not
> limited to appointing a successor trustee, assigning or releasing, in whole or in part
> this Security instrument, foreclosing or directing Trustee to institute foreclosure of
> this Security Instrument, or taking such other actions as Lender may deem
> necessary to appropriate under this Security Instrument. The term "MERS"
> includes any successors and assigns of MERS.

*Id.* at 17. It amended definitions, including that the "nominee" is "one designated to act for

another as its representative for a limited purpose." *Id.* The initial trustee was Thurston County

Title Company, the Clarks were the "Borrower" and Evergreen was the "Lender" under the deed.

*Id.* at 5.

On September 30, 2016, Evergreen sold the loan to Freddie Mac who then deposited it

into a mortgage-backed security trust called Freddie Mac Multiclass Certificates, Series 4612.

Dkt. 1 at 18. Eight years later, the Deed of Trust was assigned to U.S. Bank National Association

on July 23, 2024. Dkt. 27 at 22. The Deed of Trust was again reassigned to SPS on September 3,

2024. *Id.* at 24.

---

recorded on September 3, 2024 in Thurston County under Instrument No. 5027936. Dkt. 27.
Under Federal Rule of Evidence 201(b), a court "may take judicial notice of maters of public
record and consider them without converting a Rule 12 motion into one for summary judgment."
*United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir.
2008); *see Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 967 n.1 (9th Cir. 2017) (taking
judicial notice of publicly recorded documents that Defendants attached to their motion to
dismiss). Here, the documents have been publicly recorded and "can be accurately and readily
determined from sources whose accuracy cannot reasonably be question." Fed. R. Evid.
201(b)(2). Thus, while the Court takes the facts alleged in the complaint as true and construes
them in the light most favorable to Ms. Clark, it also takes judicial notice of the documents
requested by Defendants. *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
768 F.3d 938, 945 (9th Cir. 2014).

Ms. Clark alleges that she unknowingly entered a trust relationship with Defendants during the property closing with Thurston County Title Company. Dkt 1 ¶ 1. Ms. Clark asserts that Evergreen unlawfully appointed MERS as a beneficiary without disclosing her right to appoint her own beneficiary. *Id.* She also alleges that the promissory note was securitized without Evergreen "disclosing the true nature of the securitization and the note transfer or sale to Freddie Mac FHLMC Trust, with Wells Fargo Securities LLC acting as Lead Manager." *Id.*

Based on these facts, Ms. Clark claims: (1) "Defendants engaged in a pattern of racketeering activity, including mail and wire fraud, by misrepresenting the nature of the transaction and failing to disclose the securitization of Plaintiff's note"; (2) "Evergreen Moneysource and Thurston County Title Company breached their fiduciary duties by failing to act in the Plaintiff's best interests and omitting material facts during the transaction (RCW 11.98.070)"; (3) "Defendants falsely represented their roles in the transaction, causing great financial harm to Plaintiff[]"; (4) "Defendants failed to disclose settlement services and withheld profits from the trust transaction, violating Plaintiff's right to surplus distributions"; (5) "Defendants failed to disclose the terms and implications of the loan and securitization, depriving Plaintiffs of informed consent"; (6) "Defendants retained profits from the securitization of [Plaintiff's] note, violating equitable principles"; and (7) "Defendants conducted a trust transaction without informing Plaintiff[] of [her] rights as trustor[]/grantor[] of the Trust." *Id.* ¶¶ 2–8.

In March 2024, Defendants moved to dismiss Ms. Clark's complaint for failure to state a claim. Dkt. 22, 26. Ms. Clark responded, Dkt. 30, 31, and Defendants replied, Dkt. 36, 38. Ms. Clark filed a surreply for each motion. Dkt. 40, 42. The motions are fully briefed and ripe for consideration.

1

2

### III.    LEGAL STANDARD

**A.    Rule 12(b)(6)**

3

4

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of

5

6

Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon

which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a

7

8

cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation

9

10

omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual

allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient

11

12

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v.*

*Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

13

14

(2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

15

*Id.* (quoting *Iqbal*, 556 U.S. at 678).

16

17

The Court "must accept as true all factual allegations in the complaint and draw all

reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr.*, 768 F.3d at 945, but

18

19

need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S.

at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more

20

21

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of

22

23

the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Iqbal*, 556 U.S. at 678.

24

**B.     Standing**

Article III of the U.S. Constitution limits the Court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. For a case or controversy to exist, the party bringing the case must have standing. *Perry v. Newsom*, 18 F.4th 622, 630 (9th Cir. 2021). The "irreducible constitutional minimum" of Article III standing requires the plaintiff to show the following three elements: "(1) [The plaintiff] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). As the party invoking the Court's jurisdiction, the plaintiff "bears the burden of establishing these elements." *Id*.

Injury in fact is the "[f]irst and foremost" of the three elements. *Id*. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A concrete injury is one that is "real, and not abstract." *Spokeo*, 578 U.S. at 340 (internal quotation marks omitted). "An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "A 'particularized injury' is one that 'affect[s] the plaintiff in a personal and individual way.'" *Safer Chems., Healthy Fams. v. U.S. Env't Prot. Agency*, 943 F.3d 397, 411 (9th Cir. 2019) (quoting *Spokeo*, 578 U.S. at 339).

**IV.     DISCUSSION**

**A.     Ms. Clark lacks standing to bring her RICO claim.**

Defendants argue that Ms. Clark lacks standing to bring her RICO claim because she is not a party to or an intended beneficiary of the pooling and servicing agreement ("PSA"). Dkt. 26 at 5 (citing *Alexander v. Wells Fargo Bank, N.A.*, No. C15-459RAJ, 2015 WL 5123922,

at *3 (W.D. Wash. Sept. 1, 2015)). Since Ms. Clark alleges that the loan was wrongfully sold to a pool without her knowledge, Defendants argue that Ms. Clark concedes she was not privy to the PSA. *Id.* at 5–6. Accordingly, Defendants contend that Ms. Clark lacks standing to bring this claim. *Id.* at 6.

Ms. Clark responds that she has standing to challenge the securitization process and PSA violations because "courts have recognized that a borrower has standing to challenge assignments and securitization where it affects enforcement, standing to foreclose, or clouded title." Dkt. 31 at 3 (citing *Glaski v. Bank of Am.*, 218 Cal. App. 4th 1079 (2013)). She also argues that "Washington State recognizes borrower's right to contest improper assignments affecting their title interest." *Id.* at 4 (citing *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 285 P.3d 34 (2012)).

The cases that Ms. Clark cites are inapplicable here because unlike the plaintiffs in *Glaski* and *Bain*, her claims stem from Evergreen's sale of her loan to the Mac FHLMC Trust. *See* Dkt. 1 ¶ 1. In *Glaski*, the plaintiff brought a wrongful foreclosure action, claiming that the foreclosing entity had not actually been assigned the deed of trust before it commenced foreclosure. 218 Cal. App. 4th at 1093–94. Here, however, Ms. Clark is not challenging the foreclosure of the property by a non-holder of the Deed of Trust. *See* Dkt. 1 ¶ 2. Her RICO claim is based on the securitization of her loan and the alleged fraud committed during that process. *See id.* ("Defendants engaged in a pattern of racketeering activity, including mail and wire fraud, by misrepresenting the nature of the transaction and failing to disclose the securitization of Plaintiff's note.").

In *Bain*, the Washington Supreme Court held that a homeowner may sue MERS under the Washington Consumer Protection Act ("CPA") if MERS represents itself as a beneficiary but does not hold the promissory note. 175 Wn.2d at 119–20. But the court clarified that "the mere

fact that MERS is listed on the deed of trust as a beneficiary is itself not an actionable injury." *Id.* at 120. *Bain* is also inapplicable here because Ms. Clark is not bringing a CPA claim against MERS for acting as a beneficiary when it was not the note holder. *See generally* Dkt. 1. Rather, Ms. Clark is claiming that MERS unlawfully concealed the PSA and enabled the transfer of the note into a securitized trust. Dkt. 30 at 5.

Ms. Clark lacks standing to bring a RICO claim because she cannot show "an invasion of a legally protected interest." *Spokeo*, 578 U.S. at 338. In *Deutsche Bank v. Slotke*, the Washington Court of Appeals held that a borrower lacks standing to challenge violations of a securitization contract because they are "not a party to or intended third-party beneficiary of that agreement." *Deutsche Bank Nat. Trust Co. v. Slotke*, 192 Wn. App. 166, 177, 367 P.3d 600 (2016). As that court explained, "the securitization of a loan merely creates a separate contract distinct from the plaintiff's debt obligations under the note." *Id.* at n.39 (citing *In re Nordeen*, 495 B.R. 468, 479 (B.A.P. 9th Cir. 2013)). Thus, the two agreements—(1) Ms. Clark's agreement with Evergreen and (2) Evergreen and Freddie Mac's alleged securitization of that agreement—are separate contracts. *See In re Nordeen*, 495 B.R. at 479–80.

Under federal common law as well as Washington state law, "only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach." *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012) (citation omitted); *see also Gibson v. PNC Bank Nat'l Ass'n*, 673 F. App'x 634, 636 (9th Cir. 2016) (The plaintiff "may not bring a claim based on violations of the Pooling and Servicing Agreement (PSA), because he was not a party to the PSA.") (citation omitted); *Hummel v. Northwest Trustee Servs., Inc.*, 180 F. Supp. 3d 798, 806–07 (W.D. Wash. 2016) ("[T]he majority of Ninth Circuit courts have held that plaintiffs lack standing to challenge noncompliance with a PSA in securitization unless they are

ORDER ON DEFENDANTS' MOTIONS TO DISMISS, PLAINTIFF'S CROSS-MOTIONS, AND PLAINTIFF'S MOTION TO STRIKE, MOTION FOR LEAVE TO FILE, AND MOTION FOR PARTIAL SUMMARY JUDGMENT - 9

parties to the PSA or third party beneficiaries of the PSA.") (citation modified) (citing cases).

Ms. Clark was not a party to or an intended third-party beneficiary of the PSA between Evergreen and Freddie Mac. The complaint specifically alleges that Ms. Clark did not participate in the securitization contract. *See* Dkt. 1 ¶ 1 ("The promissory note was securitized without Evergreen Moneysource Mortgage disclosing the true nature of the securitization and the note transfer or sale to Freddie Mac FHLMC Trust[.]"). Ms. Clark thus lacks standing to assert any claims arising from that contract, including her allegations of mail and wire fraud. *See Lial v. Bank of Am. Corp.*, 633 F. App'x 406, 406 (9th Cir. 2016) (Borrowers "lack standing to enforce the terms of any pooling and service agreement and therefore cannot challenge any assignment into a securitized trust. . . . We reject as without merit the [plaintiffs'] contention that the securitization of their loan rendered their note or deed of trust fraudulent."); *Hunt v. U.S. Bank. N.A.*, 593 Fed. App'x 730, 732 (9th Cir. 2015) (applying analogous California law to conclude that "[e]ven if the improper securitization occurred or the assignments were fraudulent, [plaintiffs] are not a party to those transactions and are not the victims. . . . [T]hey cannot show the existence of a present, actual controversy[.]").

Accordingly, the Court DISMISSES Ms. Clark's RICO claim without prejudice for lack of jurisdiction. *Hampton v. Pacific Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction . . . must be without prejudice, because a lack of jurisdiction deprives the dismissing court of any power to adjudicate the merits of the case.").

**B.    The statute of limitations bars the TILA, RESPA, unjust enrichment, and breach of fiduciary duty claims.**

    ***1.    TILA* and *RESPA* claims**

TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the

borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). TILA claims seeking monetary damages are subject to a one-year statute of limitations, which begins to run "from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Ms. Clark alleges that Defendants violated TILA by "fail[ing] to disclose the terms and complications of the loan and securitization, depriving Plaintiff[] of informed consent." Dkt. 1 ¶ 6. Thus, the violation occurred when Ms. Clark's loan was securitized on September 30, 2016. Dkt. 1 at 16; *see King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986) ("[A]s a general rule the limitations period starts at the consummation of the transaction.").

Section 2607 of RESPA prohibits kickbacks and unearned fees in mortgage loan transactions. 12 U.S.C. § 2607. These claims are also subject to one-year statute of limitations. 12 U.S.C. § 2614. In the complaint, Ms. Clark asserts that "Defendants failed to disclose settlement services and withheld profits from the trust transactions, violating Plaintiff's right to surplus distributions" under RESPA.[3] Dkt. 1 ¶ 5. She seeks $43,442,199.90 in actual damages based on the "securitization of plaintiff's note and approximate growth value in pool." *Id.* at 7.

Without evaluating the merits of Ms. Clark's TILA and RESPA claims, the Court finds that they are barred by the statute of limitations. Ms. Clark did not initiate this suit until February 18, 2025—nine years after her loan was securitized. *See id.* at 8, 16. Still, Ms. Clark argues that she is entitled to equitable tolling "where there is fraudulent concealment or failure to disclose

---

[3] In her opposition briefs, Ms. Clark raises new allegations that "[w]hen Plaintiff issued Qualified Written Requests, SPS avoided substance—refusing to confirm who truly owned or controlled the loan[,]" Dkt. 30 at 7, and "Plaintiff was denied basic accounting, ownership, and custodial transparency, violating RESPA obligations." Dkt. 31 at 5. The Court agrees with Defendants, *see* Dkt. 36 at 7, that Ms. Clark may not amend her pleading via her response brief. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (When the "legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), '[r]eview is limited to the complaint.'") (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)). But even if the Court considered the new allegations, there is no indication from the complaint or attached exhibits that the events occurred within the statute of limitations. *See* Dkt. 1 at 11–38.

ORDER ON DEFENDANTS' MOTIONS TO DISMISS, PLAINTIFF'S CROSS-MOTIONS, AND PLAINTIFF'S MOTION TO STRIKE, MOTION FOR LEAVE TO FILE, AND MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

material fact." Dkt. 31 at 6 (citing *King*, 784 F.2d at 915). While the Court agrees that the statute of limitations may be tolled "if the general rule would be unjust or frustrate the purpose of the [law]," *King*, 784 F.2d at 915, courts only "apply equitable tolling in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (citation modified); *see Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999), *as amended* (Mar. 22, 1999) ("Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time.").

       Ms. Clark has not pled sufficient facts demonstrating that equitable tolling should apply. *See Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010) (even though pro se pleadings are liberally construed, a plaintiff must still present factual allegations sufficient to state a plausible claim for relief). She asserts that she "only learned of the securitization and false statements after auditing and investor outreach[,]" Dkt. 31 at 6, and "could not have discovered the violations earlier due to fraud and nondisclosure." Dkt. 30 at 12. Ms. Clark, however, has "not alleged with any degree of particularity that [] Defendants engaged in 'wrongful conduct' that prevented [her] from discovering the facts underlying [her] claim." *McQuinn v. Bank of Am., N.A.*, 656 F. App'x 848, 850 (9th Cir. 2016) (quoting *Stoll*, 165 F.3d at 1242). Exhibits attached to the complaint show that on April 15, 2024, Ms. Clark conducted a search on the Bloomberg online database, which revealed that the loan had been securitized on September 30, 2016. Dkt. 1 at 16. But Ms. Clark does not explain why "circumstances beyond [her] control made it impossible" to discover these facts and file a claim on time. *Stoll*, 165 F.3d at 1242; *see Lyman v. Loan Correspondents Inc.*, 470 F. App'x 688, 689 (9th Cir. 2012) (affirming the district court's decision to not apply equitable tolling because the plaintiff "did not allege facts showing that the

ORDER ON DEFENDANTS' MOTIONS TO DISMISS, PLAINTIFF'S CROSS-MOTIONS, AND PLAINTIFF'S MOTION TO STRIKE, MOTION FOR LEAVE TO FILE, AND MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

1    alleged violations could not have been discovered by a reasonable plaintiff within the limitations

2    period.").

3          The TILA and RESPA claims are thus barred by the statute of limitations and

4    DISMISSED with prejudice.

5          **2.    *Unjust enrichment and breach of fiduciary duty claims*

6          Unjust enrichment and breach of fiduciary duty claims are governed by a three-year

7    statute of limitations. RCW §§ 4.16.080(2)–(3); *see Davenport v. Washington Educ. Ass'n*, 147

8    Wn. App. 704, 737, 197 P.3d 686 (2008) ("[T]he statute of limitations applicable to a common

9    law cause of action for unjust enrichment . . . is three years."); *Hudson v. Condon*, 101 Wn. App.

10   866, 873, 6 P.3d 615 (2000) (three-year statute of limitations applies for claims arising "not on

11   breach of a specific term of the contract, but on a tortious breach of fiduciary duty arising from

12   the contract"). In general, a cause of action for these claims "begins to run when a party has a

13   right to apply to a court for relief." *Matter of Gilbert Miller Testamentary Credit Shelter Tr. &*

14   *Est. of Miller*, 13 Wn. App. 2d 99, 108, 462 P.3d 878 (2020); *see Mayer v. Huesner*, 126 Wn.

15   App. 114, 123, 107 P.3d 152 (2005) (same).

16          The discovery rule "is a court doctrine designed to balance the policies underlying

17   statutes of limitations against the unfairness of cutting off a valid claim where the plaintiff, due

18   to no fault of her own, could not reasonably have discovered the claim's factual elements until

19   some time after the date of the injury." *Crisman v. Crisman*, 85 Wn. App. 15, 20, 931 P.2d 163

20   (1997), *as amended on denial of reconsideration* (Feb. 14, 1997) (citations omitted). The rule

21   will "postpone the running of the statute of limitations only until the time when a plaintiff,

22   through the exercise of due diligence, should have discovered the basis for a cause of action."

23   *Mayer*, 126 Wn. App. at 123 (citation omitted). "Traditionally, the rule has been applied in cases

24

where the defendant fraudulently conceals a material fact from the plaintiff and thereby deprives the plaintiff of the knowledge of accrual of the cause of action." *Crisman*, 85 Wn. App. at 20.

Ms. Clark argues that the discovery rule applies here because she "only recently discovered the hidden profits and note monetization" and "acted immediately upon receiving Evergreen's filings and verifying the OID and assignments." Dkt. 30 at 12; Dkt. 40 at 3. The discovery rule, however, does not toll the statute of limitations when "the plaintiff, through the exercise of due diligence, should have discovered the basis for a cause of action." *Mayer*, 126 Wn. App. at 123 (citation modified). "[W]hen a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm." *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1095–96 (W.D. Wash. 2011) (citation omitted). "The plaintiff is charged with what a reasonable inquiry would have discovered." *Id.* (citing *Green v. A.P.C. (Am. Pharm. Co.)*, 136 Wn.2d 87, 96, 960 P.2d 912 (1998)).

Here, Ms. Clark's unjust enrichment claim against all Defendants and breach of fiduciary duty claim against Defendants Evergreen and Thurston County Title Company are based on the allegations that (1) "Evergreen Moneysource Mortgage appointed MERS, Inc. as beneficiary without disclosing Plaintiff's right to appoint their own beneficiary"; and (2) the "promissory note was securitized without Evergreen Moneysource Mortgage disclosing the true nature of the securitization and the note transfer or sale to Freddie Mac FHLMC Trust[.]" Dkt. 1 ¶ 1; *see id.* ¶¶ 7, 3.

But reasonable diligence would have placed Ms. Clark on notice of the events that give rise to her claims. *See Aventa Learning, Inc.*, 830 Supp. 2d at 1095–96. For example, the Deed of Trust stated, "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successor and assigns of MERS." Dkt. 27

at 6. It also provided that the "Note or partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." *Id.* at 14. The Deed of Trust was signed by the Clarks and recorded with Thurston County in 2016, more than three years before this suit was filed. *Id.* at 15; *see Pearse v. First Horizon Home Loan Corp.*, 742 F. App'x 167, 169–70 (9th Cir. 2018) (affirming the district court's conclusion that assigning MERS as "beneficiary" and "nominee for the lender" in the Deed of Trust put the plaintiff on notice of the loan securitization). And for the reasons explained above, *see supra* Sec. IV.B.1, details regarding the loan securitization in 2016 were available on an online database, and Ms. Clark has not pled facts to show why this information could not have been obtained earlier.

Since the three-year statute of limitations has expired, the unjust enrichment and breach of fiduciary duty claims are DISMISSED with prejudice.

**C.     The complaint fails to state a claim under the FCA and Washington state trust law, RCW 11.98.130.**

"The FCA provides civil penalties against a person who submits a false claim for payment to the United States." *Mortgages, Inc. v. U.S. Dist. Ct. for Dist. of Nev. (Las Vegas)*, 934 F.2d 209, 210 (9th Cir. 1991) (citing 31 U.S.C. § 3729). "The statute provides that, in addition to enforcement actions brought by the Attorney General, a private person may bring a *qui tam* action on behalf of the government and himself as the 'relator.'" *Prather v. AT&T, Inc.*, 847 F.3d 1097, 1103 (9th Cir. 2017) (citing 31 U.S.C. § 3730) (emphasis in original). "If the relator prevails, he receives a percentage of the recovery, with the remainder being paid to the government." *Id* (citation modified). "A claim under the False Claims Act requires a showing of (1) a false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017) (citation modified).

Defendants argue that Ms. Clark "cannot allege she is entitled to any damages under [the FCA] as it does not prescribe a right of action or recovery for citizens." Dkt. 26 at 11; *see* Dkt. 36 at 7–8. Ms. Clark responds that the FCA "applies to misrepresentations made to obtain government funds or guarantees" and she alleges that "Defendant falsely represented ownership, funding origin, and asset classification in deals with Freddie Mac and FHA-backed securities . . . [which] were material to receiving federal insurance and credit." Dkt. 31 at 5.

The Court agrees with Ms. Clark that private citizens may sue those who commit fraud against the federal government under the FCA's *qui tam* provisions. *See* 31 U.S.C. § 3730(b). But Ms. Clark's claims and remedies sought are not based on fraud committed against the government, as required by the statute, but rather they are premised on financial harm inflicted against her. *See* Dkt. 1 ¶ 4 ("Defendants falsely represented their roles in the transaction, causing great financial harm to *Plaintiff*[].") (emphasis added). Accordingly, Ms. Clark has not plead a claim under the FCA. Because the defects in her FCA claim could not be cured by the allegation of other facts, the claim is DISMISSED with prejudice.

Ms. Clark next alleges that Defendants violated Washington state trust law and cites to RCW 11.98.130. *See id.* ¶ 8 ("Defendants conducted a trust transaction without informing Plaintiff[] of their rights as trustor[]/grantor[] of the Trust."). Defendants are correct that RCW 11.98.130 is the codification of the Rule Against Perpetuities ("RAP") and is inapplicable here. *See* Dkt. 22 at 7; Dkt. 26 at 12. The RAP is "concerned with indirect restraints on alienation and remoteness of vesting" and "invalidates 'interests' which 'vest' too remotely." *Robroy Land Co. v. Prather*, 95 Wn.2d 66, 68, 622 P.2d 367 (1980); *see Washington State Grange v. Brandt*, 136 Wn. App. 138, 147, 148 P.3d 1069 (2006) ("The purpose of the rule is to prevent the fettering of the marketability of property over long periods of time by indirect restraints upon its alienation."). Here, Ms. Clark is challenging the lack of disclosure regarding her loan

ORDER ON DEFENDANTS' MOTIONS TO DISMISS, PLAINTIFF'S CROSS-MOTIONS, AND PLAINTIFF'S MOTION TO STRIKE, MOTION FOR LEAVE TO FILE, AND MOTION FOR PARTIAL SUMMARY JUDGMENT - 16

securitization, *see* Dkt. 1 ¶ 8, not whether the creation of a future interest is valid based on the uncertainty of it vesting. *See Robroy Land Co.*, 95 Wn.2d at 68. Since the RAP is inapplicable to Ms. Clark's claim, and this defect cannot be cured by the allegation of other facts, this claim is DISMISSED with prejudice.

**D.    Ms. Clark's cross-motions**

In her responses to Defendants' motions to dismiss, Ms. Clark asserts the following cross-motions: (1) seeking "to strike from the judicial record all recorded Assignments of Deed of Trust executed by or involving MERS Corp, Wells Fargo Securities, U.S. Bank, or SPS Servicing dated after the closing of the original loan in 2016"; (2) requesting the "Court to issue an Order directing Defendants . . . to immediately preserve all records"; (3) seeking declaratory relief that "Evergreen is not the lawful holder of the Note" and "Evergreen is liable as an endorser under UCC § 3-415"; (4) seeking to strike Defendants' claims because they "lack standing to enforce the note"; (5) seeking to strike all post-2024 Deed of Trust assignments involving Evergreen, MERS, and U.S. Bank as untimely under REMIC rules"; and (6) seeking to strike Evergreen's characterization of her complaint as a "shotgun pleading." Dkt. 31 at 6–7; Dkt. 30 at 13–15.

First, Ms. Clark's cross-motion to strike the Deed of Trust and subsequent assignments is DENIED because those documents are matters of public record as they were recorded with Thurston County. *See supra* Sec. II; *14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d at 955 (A court "may take judicial notice of matters of public record and consider them without converting a Rule 12 motion into one for summary judgment"). Second, because Ms. Clark lacks standing to challenge the securitization of her loan and the subsequent assignments of the Deed of Trust, the Court DENIES Ms. Clark's motion for declaratory relief and motion to strike

1  Defendants' claims. Third, the cross-motion seeking document preservation is DENIED as moot

2  because Ms. Clark's claims are dismissed. *See supra* Sec. IV.A–C.

3          Ms. Clark's request for a temporary restraining order, Dkt. 61, is also DENIED because

4  she has not demonstrated that she is likely to succeed on the merits. A TRO is "an extraordinary

5  remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such

6  relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Stuhlbarg Int'l Sales Co. v.

7  John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the standard for a TRO is

8  "substantially identical" to the standard for a preliminary injunction). A plaintiff seeking a TRO

9  must show: (1) they are likely to succeed on the merits, (2) the potential for irreparable harm

10  absent preliminary relief, (3) the balance of equities favors injunction, and (4) the relief sought is

11  in the public interest. *Winter*, 555 U.S. at 20; *Stuhlbarg*, 240 F.3d at 839 n.7. The movant must

12  make a showing on each element of the *Winter* test. *All. for the Wild Rockies v. Cottrell*, 632

13  F.3d 1127, 1135 (9th Cir. 2011). Here, Ms. Clark has not shown that she is likely to succeed on

14  the merits given that she lacks standing to challenge the loan securitization, she has not stated a

15  claim under the FCA or Washington state trust law, and the statute of limitations bars her

16  remaining claims.

17          Finally, the motion for disbursement of funds, Dkt. 62, is DENIED because Ms. Clark

18  has not shown that a constructive trust is an appropriate remedy here. "A constructive trust is an

19  equitable remedy that compels the transfer of wrongfully held property to its rightful owner."

20  *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 908–09 (9th Cir. 2010), *as amended on denial of

21  reh'g* (Oct. 21, 2010) (citation omitted). "A plaintiff seeking imposition of a constructive trust

22  must show: (1) the existence of a *res* (property or some interest in property); (2) the right to that

23  *res;* and (3) the wrongful acquisition or detention of the *res* by another party who is not entitled

24

ORDER ON DEFENDANTS' MOTIONS TO DISMISS, PLAINTIFF'S CROSS-MOTIONS, AND PLAINTIFF'S
MOTION TO STRIKE, MOTION FOR LEAVE TO FILE, AND MOTION FOR PARTIAL SUMMARY
JUDGMENT - 18

to it." *Id.* (citation omitted) (emphasis in original). Ms. Clark has not shown that Defendants wrongfully acquired her property and is therefore not entitled to a constructive trust.

**E.    Leave to amend is futile.**

The Court declines to grant Ms. Clark leave to amend her dismissed claims. When assessing the propriety of leave to amend, courts consider five factors: bad faith, undue delay, prejudice to the opposing party, futility, and prior amendment. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). While pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers," amendment will not be allowed if it would be futile. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Here, amendment would be futile because Ms. Clark does not have standing to assert any claims arising from the securitization agreement and the addition of new allegations to her remaining claims would not make those claims timely or viable. *see Corinthian Colls.*, 655 F.3d at 995 ("[D]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.") (citation modified); *cf. Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (granting leave to amend where court could "conceive of facts" that would render plaintiff's claim viable). Accordingly, the Court will not grant Ms. Clark leave to amend.

## V.    CONCLUSION

For the reasons explained above, it is hereby ORDERED that:

- Defendants Evergreen and Thurston County Title Company's motion to dismiss (Dkt. 22) is GRANTED and Defendants Freddie Mac, Wells Fargo Securities, LLC, MERS, and SPS's motion to dismiss (Dkt. 26) is GRANTED.

- Ms. Clark's RICO claims are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

- All other claims against Defendants are DISMISSED WITH PREJUDICE.

- Ms. Clark's cross-motions (Dkt. 30, 31) are DENIED.

- The Court DENIES Ms. Clark leave to amend her complaint. Ms. Clark's motion to strike affirmative defenses (Dkt. 32), motion for leave to file (Dkt. 34), and motion for partial summary judgment (Dkt. 47) are DENIED as moot.

- Ms. Clark's motion for temporary restraining order (Dkt. 61) and motion for disbursement (Dkt. 62) are DENIED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 9th day of June, 2025.

Tiffany M. Cartwright
United States District Judge

ORDER ON DEFENDANTS' MOTIONS TO DISMISS, PLAINTIFF'S CROSS-MOTIONS, AND PLAINTIFF'S MOTION TO STRIKE, MOTION FOR LEAVE TO FILE, AND MOTION FOR PARTIAL SUMMARY JUDGMENT - 20